## Case No. 246.

### The ALLIANCE.

### [Blatchf. Pr. Cas. 646.][1]

Circuit Court, S. D. New York. July 17, 1863.

PRIZE—CREW AS WITNESSES—NEUTRAL PROPERTY.

1. The examination of witnesses in a prize case should be confined to persons on board of the captured vessel at the time of the capture, unless upon special permission of the court first obtained.

2. In this case none of the crew on board at the time of the capture, eleven in number, were examined; but, instead, two seamen who had been discharged from the vessel before her capture were examined; and no explanation of the reason for this was given. This was a great irregularity, which cannot be overlooked or disregarded in a consideration of the proofs.

3. Vessel and cargo acquitted of a violation of, or of an attempt to violate, the blockade.

4. Vessel *held* to be neutral property. Further proof ordered as to the neutral ownership of the cargo; and further proof allowed as to the proprietary interests in the vessel, the vessel and cargo being claimed by the same party.

In admiralty.

NELSON, Circuit Justice. The Alliance was captured on the 2d of May, 1862, while at anchor at the dock of Morehead. City, opposite Beaufort, North Carolina, by United States troops, and was subsequently delivered to Commander Lockwood. She is a vessel of over 600 tons burden, and was built in Portsmouth, Maine, some twelve or more years ago. She was owned by Razer and others, of Charleston, South Carolina, down to February, 1861, when she was

[1][Reported by Samuel Blatchford, Esq.]

purchased in Liverpool, by J. R. Armstrong and H. Gerard, British merchants of that city. S. De Forest, an American citizen, was master. He was appointed by the owner, at Liverpool, and then took possession of her. Her last voyage was from St. John's, N. B., to Beaufort, North Carolina. She left St. John's in August, 1861, with an assorted cargo, and arrived at Beaufort on the 22d of the same month. There were no blockading vessels at Beaufort when she entered, and none arrived until several days afterwards. Her cargo was there discharged, and another was put on board, consisting of resin, pitch, and spirits of turpentine. She had no arms or ammunition on board, on her voyage to Beaufort, nor any cargo contraband of war. She was laden with a full cargo about the 14th of September, and remained in port, awaiting the removal of the blockade, from that period until the 2d of May, 1862, when she was captured by the troops that took Fort Macon and the town of Beaufort. She was bound from Beaufort to Liverpool, with the cargo that was on board at the time of capture. The above is, I think, the fair weight of the proofs that are entitled to credit.

Some of the facts are sought to be impeached by the testimony of two of the seamen, Stevens and Thompson. One of them is an Italian, and unable to speak or understand English, and both of them were discharged from the Alliance while she was lying at Beaufort, one of them as early as February previous to the capture, and were not of the crew or on board of the vessel at the time of the capture. Why these witnesses were selected and examined in preparatorio, in place of some of the crew on board at the time of the capture, who were in number eleven, has not been explained. It was a great irregularity, which cannot be overlooked or disregarded in a consideration of the proofs. The examination should have been confined to persons on board at the time of the capture, unless upon special permission of the court first obtained.

I am satisfied, upon a very full consideration of the proofs, that there was no actual blockade of the port of Beaufort at the time of the entry therein of the Alliance; and, further, that no intention existed on the part of the master, after such entry, and the establishment of the blockade, to break it, and that no act was done by him with such intent, while the vessel remained in the harbor previous to her capture. I think, also, that the vessel belonged to British owners bona fide, and even before the breaking out of hostilities. But I am not entirely satisfied that the goods on board of the vessel at the time of capture were the property of British owners, as claimed. Upon this ground, I shall send the case for further proofs on this point, to be presented at the next term of this court; and as the

claim of property in the vessel and the cargo is made in behalf of the same party, or one of the same parties, further proofs may be taken as to the proprietary interest in the vessel, as well as the cargo, by either or both of the parties to the suit.